UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DOROTHY HARRIS, ET AL            CIVIL ACTION NO. 17-cv-0331

VERSUS

KROGER CO.            MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

Dorothy Harris, an 82-year-old woman with vision problems, was shopping at a Kroger store on Barksdale Blvd. in Bossier City when she visited the restroom, which was located in an employee breakroom in the back of the store. After leaving the bathroom, and just after she exited the breakroom, Mrs. Harris fell and broke her right arm. She and her husband filed suit against Kroger in state court and alleged that her fall was caused by a flatbed stocking cart that was parked outside the breakroom door.

Kroger removed the case based on diversity jurisdiction. All parties filed written consent to have the case decided by the undersigned magistrate judge, and the matter was referred pursuant to 28 U.S.C. § 636(c). Before the court is Kroger's Motion for Summary Judgment (Doc. 11). The motion will be granted because, as explained below, Harris does not have proof that the stocking cart caused her fall.

**Relevant Facts**

Dorothy Harris, age 82, visited the Kroger store on Barksdale Blvd. in Bossier City with her husband, Thomas Harris. Mrs. Harris testified that she has vision problems and has been receiving vision-related disability benefits since 1980. She has received four cornea transplants in her left eye, and she drives only in an emergency. She testified that she does not have significant problems with her right eye.

The entry to the only restrooms in the Kroger store was outside of the normal shopping area. To get to the restrooms, a customer had to walk through a set of double doors into what the parties call a back room. Photographs indicate that it is predominantly a stockroom or warehouse type area that contains several crates and racks that hold boxes of products. The customer enters through the double doors and must walk about 20 feet straight ahead before turning left, through an open doorway, into the employee breakroom. The customer restrooms are accessible from the breakroom. The manager testified that these are the only restrooms in the store, customers are allowed to use them, and they routinely do so.

Photographs of the doorway into the breakroom show a Coca Cola vending machine against the wall to the immediate right of the door. To the immediate left of the door (the side from which Mrs. Harris would have approached the doorway as she entered the breakroom) there was a rack against the wall that held some boxes. The stocking cart at issue was parked immediately in front of the rack. The cart is a flat metal bed, about eight inches off the ground, with about a three feet tall handle on the end of the cart that was nearest the

doorway. The rack and the cart did not protrude into the doorway, but they were snug against its left side, as the vending machine was snug against the right side.

When Mrs. Harris walked through the double doors, she saw Bobby Merritt, a Coca Cola employee who was servicing the vending machine. She asked Merritt where the bathrooms were located, and he pointed her to the breakroom area. Merritt testified in an affidavit that he saw Mrs. Harris walk past the stocking cart (on her left), which was parallel to the wall and against the rack, and turn left into the breakroom. He said that it appeared she had on some kind of sunglasses.

When Mrs. Harris left the breakroom on her way back to the store, she took a right turn as she exited the breakroom door. She testified that she "took a few steps" and, "The next thing I know, I am lying flat on my face on the floor." She said that she fell forward but, to her knowledge, she did not hit anything other than the floor on her way down. The following exchange occurred during a discussion of the cause of the fall:

> Q      Did you hit anything on the way down or before you fell?
>
> A      Just the floor.
>
> Q      Do you know what it was that caused you to fall?
>
> A      **I tripped on the cart.**
>
> Q      How do you know that?
>
> A      When whoever came and helped me up, they sat me on the cart. That's the only thing that was there.

Q      Did you have any sensation before or as you tripped of a foot hitting the cart or the leg hitting the cart?

A      I don't recall that, no.

Q      Did you notice any bruise on any part of your foot or your leg that you might have associated with hitting the cart?

A      I did not.

Q      **So is it just your assumption that you tripped on the cart because that's the only thing that was around?**

A      I don't know how to answer that.

Q      Well, I think you said a second ago you thought you tripped on the cart because that was the only thing there?

A      **Well, that would be my assumption**.

Q      Do you have any recollection of actually a part of your body striking the cart before you hit the ground?

A      I do not.

No one else saw Mrs. Harris fall. Bobby Merritt and Kroger employee Patricia Davis were the only other persons in the area. Merritt testified that he was not facing Mrs. Harris's direction, so he did not see her fall. But he did hear the noise of her fall and went over to help her. Merritt testified that the lighting in the area was adequate, and it was easy to see items such as the Coke machine and the stocking cart.

Kroger employee Patricia Davis was in the breakroom and heard the accident. She walked out to help and saw that Mr. Merritt had Mrs. Harris sitting on the cart. Davis said

that she had recently walked through the area, and the cart had been there with no part of it sticking out into the doorway.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Analysis**

Kroger challenges Mrs. Harris's ability to prove that the cart caused her fall. Kroger also attacks other elements (unreasonable risk of harm, lack of reasonable care) of a claim of merchant liability under La. R.S. 9:2800.6, but it begins with a challenge to the

fundamental prerequisite that the plaintiff prove a condition of the merchant's premises caused her fall. Kroger points to Mrs. Harris's deposition testimony where she first said that she tripped on the cart but, when pressed, said she did not recall hitting the cart, had no bruise on her leg to indicate that she did, had no recollection of actually striking the cart before she hit the ground, and had only her assumption that the cart caused her fall.

Kroger points to decisions such as Reed v. Home Depot USA, Inc., 843 So.2d 588 (La. App. 2d Cir. 2003), in which a customer was looking at plants displayed on wooden pallets arranged in the parking lot when she fell and broke her hip. The customer assumed that her fall was caused when she wedged her foot in one of the pallets, but her shoe was not stuck under a pallet, she could not explain what caused her to fall, her view was unobstructed, and she denied slipping or tripping on anything. The only other witness, her son, testified that he did not actually see the fall, but he thought it happened because of the narrow spaces between the rows of pallets. He speculated that his mother's shoe hung inside a pallet, but he did not actually see that happen.

The trial court granted summary judgment for the merchant, and the appellate court affirmed. The appellate court stated that the "speculation as to what caused the accident cannot supply the *factual support* necessary to show that the plaintiff would be able to meet her evidentiary burden at trial." Reed, 843 So.2d at 591. Because the plaintiff had not shown evidence of causation, there was no need to address the existence of hazardous condition or other elements of the claim. Id.

Kroger also points to Ton v. Albertson's, LLC, 182 So.3d 246 (La. App. 2d Cir. 2015), where a customer was in the parking lot when she fell and injured her shoulder. No one witnessed the fall, but the Tons alleged in their petition that Mrs. Ton's foot caught on a defect in the concrete. Mrs. Ton could not identify what her foot went into or hit, and there was nothing but speculation that she tripped on an area of the parking lot that included a small crack or hole along an expansion joint. The trial court granted summary judgment for the merchant, and the appellate court affirmed. It stated that circumstantial evidence may suffice to create a genuine issue of material fact, but "mere speculation is not sufficient." Ton, 182 So.3d at 249. The court cited Reed and concluded that the Tons would not be able to meet their burden of proving causation at a trial, so summary judgment was appropriate.

Plaintiffs in this case argue that there is a genuine dispute of fact on causation because of certain written reports prepared after Mrs. Harris fell. A Kroger form for Customer's Description of Incident was completed to indicate that Mrs. Harris used the ladies restroom and "upon departing tripped over metal flat roll cart that had been placed near the exit of the restroom." Mrs. Harris later admitted under oath, however, that this was merely her speculation and that she had no evidence in the form of independent recollection or otherwise that she could offer at trial to prove that she tripped on the cart.[1]

---

[1] The form listed clothing and sunglasses as property damaged by the incident. The Coke vendor testified that it looked like Mrs. Harris may have been wearing sunglasses, but Mrs. Harris testified that if she had sunglasses with her they were hooked into her shirt and she was not wearing them.

Plaintiffs also point to a Customer Incident Report completed by the store manager, Steve Spalding. He wrote that the customer had gone to the restroom and "tripped over a stock cart that was there when she passed by the first time." Mr. Spalding was asked about this at his deposition and said that he got that information either from Mrs. Harris or Patricia Davis. We now know that Mrs. Harris was speculating, and Patricia Davis testified that she did not witness the fall.

Finally, Plaintiffs point to an Accident Information form completed when Mrs. Harris visited her physician. The form asked the patient to describe the accident. Mrs. Harris, or perhaps her husband writing for her, wrote: "After using ladies restroom upon exiting, tripped over low/flat metal cart." The physician included that information in his records, but he testified that it was based solely on the information provided by the patient. We now have the patient testifying under oath that she cannot testify to any particular facts that indicate she tripped over the cart.

Plaintiff did initially testify, "I tripped on the cart," but she admitted that this was based on an assumption because the cart was the only nearby object. She had no recollection of making any contact with the cart before or during her fall. Her initial assumption, which is noted in the incident reports, was admitted to be rank assumption. Speculation such as that is not sufficient to create a genuine dispute of material fact with respect to causation, so **Kroger's Motion for Summary Judgment (Doc. 11)** will be **granted**, and a judgment will be entered in its favor.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of December, 2017.

                                                Mark L. Hornsby
                                              U.S. Magistrate Judge